IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLOTTE W.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 2:23-cv-00137-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

    Plaintiff Charlotte W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

ECF No. 17. For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in July 1970, plaintiff alleges disability beginning February 15, 2018, with a date last insured of December 31, 2023. Tr. 13, 15, 186-195. Plaintiff alleges disability due to carpal tunnel syndrome, type two diabetes, right ankle arthritis, left knee pain, irritable bowel syndrome, and gastroenteritis. Tr. 225. Her application was denied initially and upon reconsideration. Tr. 102, 117. On May 26, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Jesse K. Shumway. Tr. 28-47. On July 30, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-27. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since February 15, 2018, the alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative joint disease of the left shoulder and mild right sided carpal tunnel syndrome, status post release surgery." Tr. 15. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except:

>with the left upper extremity, she can frequently reach overhead; and with the right upper extremity, she can frequently handle and finger.

Tr. 17.

At step four, the ALJ found plaintiff able to perform past relevant work as a hair stylist. Tr. 20. Alternatively, at step five, he found that plaintiff retained the ability to perform other jobs in the national economy such as marker, housekeeper, and cashier. Tr. 21-22. The ALJ therefore found plaintiff not disabled. Tr. 22-23.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors. She contends the ALJ erred by (1) failing to identify her alleged lumbar and cervical degenerative disc disease, lumbarization of S1 with S1 pars defects, and anterolisthesis as medically determinable impairments at step two of the sequential evaluation process, (2) discounting her subjective symptom testimony without a clear and convincing reason for doing so, (3) improperly evaluating Christopher Scott, DC, and Bradley Tymchuk, MD's medical opinions, and (4) relying on vocational expert testimony at steps four and five that was the product of incomplete hypotheticals. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

**I.     Step Two**

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were

3 – OPINION & ORDER

taken into account[.]" *Id*. at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

To deny a claim at step two, an ALJ must provide "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)).

Step two is "a *de minimis* requirement that screens out only frivolous claims," *id*. at 843; thus, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844. The Ninth Circuit has emphasized that "[a]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (simplified); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made).

Plaintiff argues the ALJ erred by finding her lumbar and cervical degenerative disc disease, lumbarization of S1 with S1 pars defects, anterolisthesis, and left shoulder impingement syndrome and adhesive capsulitis non-severe at step two. Pl.'s Br. at 16-17. Plaintiff asserts this error was harmful because the ALJ failed to consider the symptoms emanating from these limitations at steps three, four, and five. *Id.* At step two, the ALJ noted that plaintiff had both back and left shoulder issues, summarizing plaintiff's shoulder issues as "degenerative joint disease of the left shoulder," and noting a lack of imaging to support a severe impairment due to low back pain. Tr. 16.

4 – OPINION & ORDER

The ALJ failed to support his decision finding that plaintiff could not clear the "de minimis" hurdle at step two with substantial evidence. Impairments like plaintiff's left shoulder impingement syndrome, adhesive capsulitis, and degenerative disc disease "can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. Plaintiff submitted significant medical evidence demonstrating that these conditions were diagnosed, and limited her ability to work. *See, e.g.,* Tr. 532, 535-36, 594-96. At the hearing, plaintiff emphasized the severity of her left shoulder and back pain resulting from these conditions. Tr. 31-36. The ALJ erred by rejecting plaintiff's lumbar and cervical degenerative disc disease, lumbarization of S1 with S1 pars defects, and anterolisthesis as groundless despite objective imaging evidence. Tr. 532, 535-536. The ALJ also failed to consider the claimant's left shoulder impingement syndrome and adhesive capsulitis at all. Tr. 15-16. In light of the minimal burden plaintiff bears at step two, the ALJ erred by failing to support his decision that plaintiff's back and left-shoulder impairments were non-severe with substantial evidence.

The ALJ's step-two error was harmless. When an ALJ resolves step two in a claimant's favor (as he did here), any error in failing to designate specific impairments as severe can be harmless if the ALJ considers those impairments when formulating his assessment of plaintiff's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[S]tep two was decided in [the plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand."). The ALJ resolved step two in plaintiff's favor, and considered plaintiff's testimony and medical records about the non-severe limitations at subsequent steps of the five-step analysis. Tr. 20. For example, the ALJ discussed plaintiff's allegations of back pain and imaging of her cervical and lumbar spine issues, citing the

5 – OPINION & ORDER

same reports plaintiff identified in her brief. *See* Tr. 16–18 (citing, e.g. Tr. 532, 536). The ALJ likewise considered plaintiff's alleged shoulder pain and the medical records relating to all of her alleged left shoulder impairments. Tr. 17–19. (citing Tr. 32, 270, 377, 508, 514, 541). Although this error was harmless, because the Court is remanding on other grounds, the ALJ should reconsider the severity of plaintiff's alleged lumbar and cervical degenerative disc disease, lumbarization of S1 with S1 pars defects, anterolisthesis, and left shoulder impingement syndrome and adhesive capsulitis at step two.

**II.     Symptom Testimony**

Plaintiff also contends the ALJ erred by failing to identify objective medical evidence that undermined her testimony and by overstating her daily activities. Pl.'s Br., ECF No. 9 at 18-20. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that severe stiffness in her back and upper extremities upon waking, with the need for a muscle relaxer and pain medication before bed and in the morning, as well as chiropractor visits once a week and injections (Tr. 32-33); soreness, occasional stabbing pain, and ongoing stiffness, resulting in difficulty getting up and moving (Tr. 33); the need to recline or lie in bed with exacerbation of pain symptoms to take pressure off her lower back, shoulders, and neck (Tr. 33); the need for lidocaine injections every two weeks to both of her shoulders (Tr. 33); the inability to function without her injections and chiropractor adjustments, which would result in absenteeism from a fulltime job (Tr. 33); neuropathy in her lower extremities after use, with pain, tingling, and feelings of electrical pules in the bottom of her feet up to her knees (Tr. 33-34); the inability to sit for extended periods and the need to change positions frequently due to a tethered spinal cord (Tr. 34); exacerbation of lower back pain with extended standing (Tr. 34); alternating between sitting, standing, walking, reclining, and lying down throughout the day (Tr. 34); ongoing limitations in the use of her right hand following carpal tunnel surgery, with the inability to push off of surfaces and weakness in her wrist (Tr. 35); developing pain symptoms in her left hand due overuse and overreliance (Tr. 35);

7 – OPINION & ORDER

overactive trigger points in her muscles, with the inability to continue her hair stylist career of 32 years, resulting in a decline in her quality of life (Tr. 36); and receiving unemployment while applying for part-time positions in customer service and caregiving. Tr. 37-39.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 17. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 17. Specifically, the ALJ found plaintiff's symptom allegations inconsistent with objective medical evidence and her daily activities. Tr. 20-23. Both were clear and convincing reasons, supported by substantial evidence, to discount plaintiff's symptom testimony.

First, the ALJ reasonably discounted plaintiff's symptom testimony because it conflicted with evidence of her everyday activities, especially her history of holding herself out as capable of work to state unemployment agencies. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The Ninth Circuit has held that, in particular, "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds [her]self out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff alleged that she could not work due to several impairments, including carpal tunnel syndrome, type II diabetes, right ankle arthritis, bad left knee, irritable bowel syndrome, and gastroenteritis. Tr. 225. But the record showed that plaintiff applied for and received unemployment benefits in 2019, 2020, and 2021—

most of the 2018-21 relevant period. Tr. 206–07, 219–20. Although plaintiff argues the ALJ erred "in falsely stating that [plaintiff] held herself out [to unemployment agencies] as capable of fulltime unaccommodated work," the ALJ only took plaintiff at her word: at the hearing, she testified that she was "ready, willing, and able to work" when she applied for and received these benefits. Tr. 37-38. The ALJ also identified plaintiff's ability to do laundry and dishes, make meals, drive, shop, take vacations and babysit children through the weekend as counter to her testimony about the extent of her physical limitations. Tr. 414, 630. The ALJ reasonably relied on these activities and plaintiff's history of holding herself out as able to work to discount her allegations about disabling symptoms.

The ALJ also relied on records showing plaintiff's symptoms improved with treatment when concluding her symptom testimony overstated her limitations. An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ provided another clear and convincing reason to discount plaintiff's symptom testimony when he concluded that her left shoulder and carpal symptoms improved with treatment. Evidence that treatment improves a claimant's symptoms can be a clear and convincing reason for discounting a plaintiff's symptom testimony. *Wellington*, 878 F.3d at 876.

Plaintiff sought treatment for shoulder pain and carpal tunnel syndrome at the start of her alleged disability period in early 2018, but not between May 2018 and September 2019, even though carpal tunnel release surgery was recommended. Tr. 338, 340. Then, when plaintiff re-established care in 2020, she had an excellent response to treatment for both her carpal tunnel syndrome and left shoulder complaints. *See, e.g.*, 440, 463, 468, 488, 496, 499, 504, 508, 509, 513–14. She had surgery for carpal tunnel syndrome in November 2020, and her "overall response to intervention [was] excellent." Tr. 504, 508–09, 513, 514. Imaging of plaintiff's left shoulder from December 2020 showed no abnormalities other than an old left clavicular fracture. Tr. 536. In October 2021, imaging showed presumed degenerative changes of the acromioclavicular (top-of-shoulder) joint but no definite rotator cuff injury or other obvious deficits. Tr. 677–78. Separate imaging of the claimant's cervical and lumbar spine showed only mild degenerative disc disease. Tr. 532–33, 536. The ALJ also highlighted various medical visits where plaintiff reported "immediate improvement in subjective pain and stiffness" following shoulder treatment, that "helped a lot," and that her pain reports decreased over time. *See, e.g.*, Tr. 406, 693, 695. In all, the ALJ reasonably found that the objective medical findings and plaintiff's treatment record did not support her more severe allegations.

### III.    Medical Opinion Evidence

Plaintiff also argues the ALJ erred in rejecting Bradley Tymchuk, MD, and Christopher Scott, DC's medical opinions. Pl. Br. at 9-16. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization,

and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

    *A. Dr. Bradley Tymchuk*

On October 27, 2021, the claimant's treating physician, Dr. Tymchuk, provided a medical source statement indicating the following: (1) plaintiff suffers from type 2 diabetes, IBS, anterolisthesis, chronic left shoulder pain, and mixed hyperlipidemia (Tr. 703); (2) she suffers from chronic pain, poor sleep, and difficulty performing activities of daily living and selfcare (Tr. 703); (3) she is limited to occasionally lifting/carrying 20 lbs. and frequently lifting/carrying 10 lbs. (Tr. 704); (4) she can stand and/or walk for a total of 1 hour in an 8-hour workday (Tr. 704); (5) she can sit for 30 minutes at one time for a total of 4 hours in an 8-hour workday (Tr. 704); (6) she must alternate positions every 30 minutes to alleviate her symptoms due to spasm, tightness, and pain with reaching in her shoulder and upper back (Tr. 704); (7) she is limited to rarely reaching overhead and forward/laterally in her left and right upper extremities due to

exacerbation of neck, back, and shoulder pain with such movements (Tr. 704-705); (8) she would be off-task greater than 20% of the time during an 8-hour workday due to deficits in focus resulting from distractions and annoyances from pain, spasms, and discomfort (Tr. 705); and (9) she would miss at least 16 hours of work per month from a full-time job due to frequent exacerbations requiring rest and a reclined position. Tr. 705.

The ALJ rejected Dr. Tymchuk's opinion because "it was partially provided in a checkmark fashion and upper extremity limitations did not appear to be consistent with this provider's indications that only the left shoulder was impaired, with no degenerative changes and the claimant being essentially normal for her age." Tr. 20.

First, the ALJ failed to adequately address the strength of the evidence underlying Dr. Tymchuk's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ noted Dr. Tymchuk's opinion was "partially provided in a checkmark fashion," and concluded his limitations were inconsistent with notation from a single appointment that focused only on the left shoulder. Tr. 20. Neither reason is supported by substantial evidence. First, the fact that Dr. Tymchuk summarized opinions in a check-box format does not necessarily render his opinion any less valid. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) (noting "there is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Instead, where (as here) a doctor's check-the-box opinions are supported by significant treatment history, the ALJ must evaluate that history to evaluate the strength of the medical opinion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Furthermore, the ALJ's citation to one appointment note does not

constitute substantial evidence that Dr. Tymchuk's opinion lacked support in the record. On the contrary, much of the record backs up his evaluation. *See, e.g.,* Tr. 377 (neck, back, and left shoulder pain), 418 (describing back and neck pain). On remand, the ALJ must consider the strength of this evidence and whether it justifies the limitations provided in Dr. Tymchuk's opinion.

The ALJ also failed to cite substantial record evidence inconsistent with Dr. Tymchuk's medical opinions. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found Dr. Tymchuk's opinion unpersuasive because it was inconsistent with one aspect of one treatment note from January 2021. Tr. 20 (citing Tr. 541). But the ALJ failed to consider the rest of the medical record, a large part of which is consistent with Dr. Tymchuk's opinion. *See* Pl. Br. at 13-14 (citing several examples). These records reflect that plaintiff's back and neck pain are significantly limiting and suggest her left shoulder pain has been ongoing throughout the relevant period. *Id.* Although plaintiff moderated her pain with treatment, she still had significant back, neck, and shoulder issues throughout the relevant period, which fits Dr. Tymchuk's opinion that she would be unable to work for two or more days a month and be off-task more than 20% of the time during an 8-hour work day due to distractions and annoyances from pain, spasms, and discomfort. Tr. 705. Ultimately, the ALJ failed to cite substantial evidence of inconsistent medical records to support his decision to find Dr. Tymchuk's opinion unpersuasive, which was error.

    B. Christopher Scott, D.C.

On November 11, 2021, treating chiropractor Christopher Scott, DC, provided a medical source statement indicating the following: (1) plaintiff suffers from neck, back, hip, and shoulder

pain, resulting in manipulation therapy; (2) she continues to experience chronic pain even with treatment; (3) she is limited to standing and/or walking for a total of 4 hours in an 8- hour workday; (4) she is limited to sitting for a total of 4 hours in an 8-hour workday; (5) she must spend the day alternating between sitting, standing, reclining, and lying down due to chronic pain; and (6) she would miss at least 16 hours of work per month, as her pain would make it very difficult to perform work tasks and will hinder work performance. Tr. 706-707.

The ALJ provided a more fulsome analysis of Dr. Scott's opinion, but still failed to adequately analyze the supportability and consistency of his conclusions. As noted above, an ALJ must consider medical opinions' support in the record and their consistency with other evidence. 20 C.F.R. § 404.1520c(c)(1-2). The ALJ's conclusion that Dr. Scott's opinion was unpersuasive because it was in "checkmark fashion," inconsistent with evidence that "only the left shoulder was impaired," and that the sitting and walking limitations were "issue[s] reserved to the commissioner" is not supported by substantial evidence. Tr. 20-21. As described above, an opinion's "checkmark" format is not a sufficient basis to find it lacks support from the record. *Trevizo*, 871 F.3d at 677. Nor did Dr. Scott limit his diagnosis to plaintiff's left shoulder. Dr. Scott concluded that plaintiff's chronic neck, back, hip, and shoulder pain limited her ability to perform work-related tasks and would hinder her work performance. Tr. 706-707. And the medical record contains significant support for Dr. Scott's opinion that plaintiff's limitations stemmed from neck, back, and hip issues, not just her shoulder. *See, e.g.,* Tr. 683-685. The ALJ addressed none of these records. Tr. 20-21. Finally, while statements about a claimant being "disabled, blind, able to work, or able to perform regular or continuing work" are statements on issues reserved to the Commissioner, medical opinions about "what you can still do despite your impairment(s)" (like how long you can stand or sit) are not. 20 C.F.R. §§ 416.920b(c)(3)(i),

416.913 (a)(2)(i)(B). This was not a sufficient reason to disregard Dr. Scott's opinion either. Because the ALJ did not support the decision to find Dr. Scott's opinion unpersuasive with substantial evidence, the Court will remand on this basis so that the ALJ can perform the appropriate supportability and consistency analysis.[2]

### IV.    Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the

---

[2] Plaintiff also contends the ALJ erred at steps four and five by relying on vocational expert testimony that did not reflect the full gamut of limitations Drs. Scott and Tamchuk imposed in their opinions. Pl. Br at 20. Because the Court is remanding for the ALJ to reconsider the supportability and consistency of these opinions, it is premature to consider whether the ALJ committed any error at steps four and five.

district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed error by failing to identify several of plaintiff's limitations as severe impairments at step two, and by failing to support his decision to find Drs. Scott and Tamchuk's opinions unpersuasive with substantial evidence. After reviewing the record, however, conflicts and ambiguities remain within the medical record about whether plaintiff's limitations rendered her totally unable to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate plaintiff's impairments at step two, and Drs. Scott and Tamchuk's opinions, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED this 25th day of October, 2024.

    /s/ Jolie A. Russo
    Jolie A. Russo
    United States Magistrate Judge